IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* [Under Seal]<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>[Under Seal],<br><br>　　　　Defendants. | **FILED UNDER SEAL**<br>**CASE NO.**_____<br>Pursuant to 31 U.S.C. § 3730<br>(False Claims Act)<br><br>(Exempt from ECF) |

**FILED UNDER SEAL**

Case: 1:23-cv-02521 JURY DEMAND
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 8/29/2023
Description: Gen. Civil (F-DECK)

RECEIVED
AUG 29 2023
Clerk, U S District & Bankruptcy
Courts for the District of Columbia

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*ex rel.*<br><br>Patrick Low<br>5424 Sherier Pl, NW<br>Washington, DC 20016<br><br>   Plaintiffs,<br><br>vs.<br><br>President and Fellows of Harvard College<br>1033 Massachusetts Ave, 5th Floor<br>Cambridge, MA 02138<br><br>  Serve Registered Agent:<br>  HARVARD UNIVERSITY<br>  MASSACHUSETTS HALL<br>  Cambridge, MA 02138<br><br>   Defendant. | CASE NO._____<br>**FILED UNDER SEAL**<br>Pursuant to 31 U.S.C. § 3730<br>(False Claims Act) |

**COMPLAINT AND JURY DEMAND**

1. Relator Patrick Low, *pro se*, brings this False Claims Act ("FCA") Complaint on behalf of the United States of America against the President and Fellows of Harvard College ("Harvard" or "Defendant").

**NATURE OF THE CASE**

2. This is a claim to recover damages and civil penalties on behalf of the United States of America arising from false statements and false claims made by the Defendant when: (1) on August 29, 2019, Defendant submitted a certain grant application to the U.S. Department of Education ("ED") that included content that discriminated on the basis of race and/or skin color

in violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*) ("Title VI") and was otherwise noncompliant with applicable legal authorities, while (2) also on August 29, 2019, Defendant submitted signed assurances of compliance with Title VI and with other applicable legal authorities – assurances that were in fact false, (3) on June 24, 2020, Defendant was awarded by ED a grant totaling $1,399,993 in federal funds that was to be (and is currently being) disbursed to Defendant by ED over a period of four years (from July 1, 2020 to June 30, 2024) for its grant project/research proposal (grant number R305A200278), (4) this grant award was made via a Grant Award Notification ("GAN") issued by ED on June 24, 2020, (5) the GAN specifically listed compliance with Title VI and other applicable legal authorities as a condition of the grant award, (6) Defendant withdrew and spent (and is currently spending) those federal funds, thus consenting to the GAN conditions, and (7) Defendant is currently implementing a grant project/research proposal that includes illegally discriminatory content and is otherwise noncompliant with applicable legal authorities – thus violating the law, the GAN conditions, and the Defendant's own signed assurances of legal compliance.

3. Defendant made false statements and false claims regarding its compliance with Title VI and with other applicable legal authorities at two separate times (at least). The Defendant did so to obtain federal funds from ED for its grant project/research proposal because making representations of compliance is required when applying for, being awarded, and/or spending federal funds. Defendant acted to defraud the United States of America in violation of the False Claims Act, 31 U.S.C. §§ 3729-32 ("FCA").

## JURISDICTION AND VENUE

4. This action arises under the False Claims Act, 31 U.S.C. §§ 3729-3732 ("FCA"). This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §§ 3730 and 3732(a); and 28 U.S.C. §§ 1331 and 1355.

5. This Court has personal jurisdiction over the Defendant because many of the prohibited acts committed by the Defendant occurred within the District of Columbia.

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1395, and under 31 U.S.C. § 3732(a). Many of the acts proscribed by the False Claims Act occurred within the District of Columbia.

## THE PARTIES

7. The Plaintiff in this action is the United States of America, which solicits, reviews, scores, and funds grant applications via numerous executive-branch departments and agencies. One such agency is the U.S. Department of Education ("ED"), which is headquartered in Washington, D.C. As of 2020, ED disbursed approximately $45 billion of federal funds via grant awards per year. This amount is split approximately 90/10 between "formula" and "discretionary" grants. Formula grants are disbursed by ED to State Education Agencies (SEAs) and Local Education Agencies (LEAs), entities which then solicit, review, and fund grant applications and make grant awards via "grant competitions." Discretionary grants are disbursed by ED directly to grantees (such as Defendant) via "grant competitions" operated by ED itself.

8. Relator Low is a citizen and resident of the United States and the District of Columbia. He was employed by ED between July 5, 2020 and February 5, 2021. His work location was Washington, D.C. Relator Low's primary job was to review grant applications (including the grant application submitted to ED by Defendant) for regulatory compliance.

9. The Defendant is the President and Fellows of Harvard College ("Harvard"), headquartered in Cambridge, Massachusetts. Defendant submitted to ED the grant application in question (the "Harvard grant") along with assurances of legal compliance (which were in fact false) on August 29, 2019.

## BACKGROUND

### The False Claims Act

10. The False Claims Act ("FCA") provides that any person who (1) knowingly presents or causes a false claim to be submitted to the Government, or (2) knowingly makes, uses, or causes to be made or used, a false statement material to a false claim, is liable for a civil penalty of between $13,508 and $27,018 per claim plus three times the amount of damages the Government sustained. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.5, Table 1.

11. For purposes of the FCA, "the terms 'knowing' and 'knowingly' means that a person, … (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." *Id.* at § (b). "[N]o proof of specific intent to defraud is required" for a successful claim under the FCA. *Id.* "[T]he term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money[.]" *Id.*

## FACTUAL ALLEGATIONS

12. On August 29, 2019, Defendant submitted a certain grant application (the "Harvard grant") to the U.S. Department of Education ("ED").

13. The Harvard grant application submitted by Defendant sought to obtain federal funding for a research proposal entitled "The Identity Project" and it included the following excerpts:

> However, although teachers of all backgrounds vary in their own ERI formation and attitudes toward discussing racial issues, White teachers in particular (currently 80% of Kl2 educators; NCES, 2019) struggle with acknowledging their own privilege and

recognizing racism, which can hinder productive conversations about race with students (Tatum, 1992; Utt & Tochluk, 2016). These challenges can result in teachers acting on their racial biases, adopting a colorblind approach that can create a hostile learning environment for ERM students, and hindering teachers' ability to establish strong relationships with their ERM students (Castro Atwater, 2008).

The training is also designed to address ethnic-racial systemic inequities. Activities and training content will prepare teachers to understand and be able to explain how institutional racism has resulted in an educational system and practices that reproduce social inequalities and result in symptoms such as the academic achievement gap. Educators will be able to explain and provide at least one specific example of how institutional racism plays out in the U.S. education system in a manner that reproduces ethnic-racial inequalities in academic outcomes (e.g., by reifying the notion that Whites do not have an ethnic-racial identity and therefore are the "norm," thereby othering youth from ERM backgrounds).

The learning goals for the second day of the training are to build teachers' understanding of systemic inequities, practice teachers' facilitation strategies around race and ethnicity, and to reflect on historic and contemporary factors that contribute to ethnic-racial inequality (e.g., White supremacy) and to apply this understanding to their students' meaning making, interpretations, and social positions. Day 2 of the summer camp intensive covers material related to Sessions 3 and 4 of the Identity Project curriculum. […] To meet the learning goals, Day 2 also involves teachers in a series of activities and discussions focused on Whiteness including: learning shared definitions around White supremacy and how it shapes the context in which all students are developing their identities, examining the role of power and privilege in their own identities and classrooms, and working through pedagogical strategies for addressing these ideas in their classrooms.

14. The quotations listed above are just a few examples among many, and these examples are representative of Defendant's "Identity Project" grant application as a whole.

15. In addition to the above excerpts, the Harvard grant application included the following terms and/or concepts: "White privilege," "White supremacy," "systemic racism," "institutional racism," "unconscious bias," and/or reducing colorblind racial ideology (thus causing teachers and students to "see race"); etc.

16. The terms and/or concepts enumerated above [(13) through (15)] discriminated on the basis of race and/or skin color in violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*) ("Title VI") and other legal authorities.

17. Additionally, the grant application was otherwise noncompliant with applicable legal authorities.

18. Also on August 29, 2019, along with its grant application, Defendant submitted to ED signed assurances of compliance with Title VI and with other applicable legal authorities.

19. Defendant's signed assurances stated, in relevant part:

> As the duly authorized representative of the applicant, I certify that the applicant:
>
> 6. Will comply with all Federal statutes relating to nondiscrimination. These include but are not limited to: (a) Title VI of the Civil Rights Act of 1964 (P.L. 88-352) which prohibits discrimination on the basis of race, color or national origin; (b) Title IX of the Education Amendments of 1972, as amended (20 U.S.C. §§1681-1683, and 1685-1686), which prohibits discrimination on the basis of sex; […] (i) any other nondiscrimination provisions in the specific statute(s) under which application for Federal assistance is being made; and, (j) the requirements of any other nondiscrimination statute(s) which may apply to the application.
>
> 14. Will comply with P.L. 93-348 regarding the protection of human subjects involved in research, development, and related activities supported by this award of assistance.
>
> 18. Will comply with all applicable requirements of all other Federal laws, executive orders, regulations, and policies governing this program.

20. These signed assurances were violated by the Harvard grant application itself, both of which were submitted to ED simultaneously on August 29, 2019.

21. These signed assurances were in fact false, and qualified as false claims and/or false statements within the meaning of the FCA.

22. On June 24, 2020, Defendant was awarded by ED a grant totaling $1,399,993 in federal funds that was to be (and is currently being) disbursed to Defendant by ED over a period of four years (from July 1, 2020 to June 30, 2024) for its grant project/research proposal (grant number R305A200278).

23. The June 24, 2020 grant award by ED to Defendant was made by ED issuing a "Grant Award Notification" ("GAN").

24. This GAN listed numerous grant award conditions, including the following:

TERMS AND CONDITIONS

(1) THE FOLLOWING ITEMS ARE INCORPORATED IN THE GRANT AGREEMENT:

> 1) THE RECIPIENT'S APPLICATION (BLOCK 2);
> 2) THE APPLICABLE EDUCATION DEPARTMENT REGULATIONS: 2 CFR PART 180, NONPROCUREMENT DEBARMENT AND SUSPENSION AS ADOPTED AT 2 CFR PART 3485; 2 CFR PART 200 AS ADOPTED AT 2 CFR 2474 (BLOCK 8), AND 34 CFR PART 75, 77, 79, 81, 82, 84, 86, 97, 98, 99; AND THE PROGRAM REGULATIONS SPECIFIED IN BLOCK 8; AND
> 3) THE SPECIAL TERMS AND CONDITIONS SHOWN AS ATTACHMENTS IN BLOCK 8 ON THE INITIAL AWARD APPLY UNTIL CHANGED.

25. As mentioned by the GAN [above, (24)], Block 2 of the GAN lists the grant number (R305A200278), and Block 8 includes the following: "REGULATIONS: CFR PART 74, EDGAR AS APPLICABLE, 2 CFR AS APPLICABLE."

26. As mentioned by the GAN [above, (24)], 34 CFR PART 75 applies to the Harvard grant; and 34 C.F.R. § 75.500 states, in relevant part:

> Constitutional rights, freedom of inquiry, and Federal statutes and regulations on nondiscrimination.
>
> (a) Each grantee shall comply with the following statutes and regulations:
>
> Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d through 2000d-4), 34 CFR part 100.

27. As mentioned by the GAN [above, (24)], 34 CFR PART 75 applies to the Harvard grant; and 34 C.F.R. § 75.700 states, in relevant part:

> Compliance with the U.S. Constitution, statutes, regulations, stated institutional policies, and applications.
>
> A grantee shall comply with § 75.500, applicable statutes, regulations, and approved applications, and shall use Federal funds in accordance with those statutes, regulations, and applications.

28. Defendant withdrew federal funds awarded by ED shortly after the June 24, 2020 grant award was made.

29. By withdrawing these federal funds, Defendant agreed to by bound by the aforementioned TERMS AND CONDITIONS listed by the GAN [above, (24) through (27)].

30. Defendant's withdrawal and/or use of these federal funds to implement its "Identity Project" [as described by the Harvard grant application, above, (13) through (15)] violated (and is currently violating) all of the following: (1) Defendant's signed assurances regarding legal compliance [above, (18) through (19)]; (2) the GAN conditions regarding legal compliance [above, (23) through (27)]; and (3) Title VI and other applicable legal authorities.

31. The violations of signed assurances, GAN conditions, and applicable legal authorities mentioned above [(30)] qualified as false claims and/or false statements within the meaning of the FCA.

## COUNT I
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)

32. The Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

33. By virtue of the acts described above, Defendant knowingly presented, or caused to be presented, false or fraudulent claims to the United States Government for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

## COUNT II
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)

34. The Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

35. By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false statements to the United States Government material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

## PRAYER FOR RELIEF

WHEREFORE, the Relator, on behalf of himself and the United States of America, prays:

A. That this Court enter judgment under Counts I and II against Defendant in an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions in violating the False Claims Act, plus all applicable statutory penalties;

B. That the Relator be awarded all costs incurred, and reasonable attorneys' fees and expenses;

C. That in the event the United States intervenes at the time this action is unsealed and proceeds with this action, the Relator be awarded an amount of at least 15% but not more than 25% of the proceeds of this action or settlement of the claims in Counts I – II.

D. That in the event the United States does not intervene as set forth above, the Plaintiff/Relator be awarded an amount of at least 25% but not more than 30% of the proceeds of this action or settlement of the claims in Counts I – II.

E. That the United States and the Relator receive all relief, both in law and equity, to which they are entitled.

## DEMAND FOR JURY TRIAL

The Relator demands a trial by jury on all issues of triable fact in the foregoing Complaint.

Submitted:   08/29/2023                    Respectfully submitted,

                                           By:  *Patrick Low*
                                           Patrick Low
                                           low@cua.edu
                                           5424 Sherier Pl, NW
                                           Washington, DC 20016
                                           Cell: (202) 631-8246

                                           *Relator (pro se)*